IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JAMES LAMONT REID,
    Plaintiff,

v.
                                    Civil No. 3:20cv685 (DJN)

SUPERINTENDENT LEABEAU, *et al.*,
    Defendants.

## MEMORANDUM OPINION

James Lamont Reid, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[1] The action is proceeding on Reid's Particularized Complaint. ("Complaint," ECF No. 18.)[2] By Memorandum Opinion and Order entered on November 8, 2021, the Court dismissed as improperly joined Reid's claims against all defendants except for Defendants Mayes, Spratley and Jones.[3] (ECF Nos. 32, 33.) The following claims remain before the Court:

Claim One      Defendant Mayes used excessive force against Reid on April 28, 2020. (Complaint at 9.)

Claim Two      "By failing to investigate the incident between Defendant Mayes and Plaintiff Reid, Defendants Spratley and C.R. Jones retaliated against Reid unlawfully, denying Reid the process he was due for exercise of his right

---

[1]    The statute provides, in pertinent part:

Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2]    The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and capitalization in the quotations from Reid's submissions.

[3]    At all relevant times, Defendants were employees of the Riverside Regional Jail ("RRJ").

> to seek redress from the jail through the use of the jail grievance
> procedure[s]
> . . . ."
>
> (*Id.* at 40–41.) This lack of action violated Reid's rights under: (a) the
> First Amendment (*id.* at 41), (b) the Eighth Amendment (*id.*), and the Due
> Process Clause of the Fourteenth Amendment (*id.* at 42).

The matter is before the Court on the Motion for Summary Judgment filed by Defendants

Mayes, Spratley and Jones (hereinafter collectively, "Defendants"). For the reasons set forth

below, the Motion for Summary Judgment will be GRANTED.

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the

Court of the basis for the motion and identifying the parts of the record which demonstrate the

absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

issue, a summary judgment motion may properly be made in reliance solely on the pleadings,

depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation

marks omitted). When the motion is properly supported, the nonmoving party must "go beyond

the pleadings" and, by citing affidavits or "'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

(quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences

in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835

(4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere

"*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at

2

251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). The Court is tasked with assessing whether Reid "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added).

In support of their Motion for Summary Judgment, Defendants submitted:  the declaration of Defendant Mayes; the declaration of Defendant Jones; and a host of other documents that the Court refers to by their CM/ECF designations.  Reid has responded to the Motion for Summary Judgment by submitting several declarations[4] and some jails records.

Additionally, at the end of his Complaint, Reid stated, "I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true.  I certify under penalty of perjury that the foregoing is true and correct."  (Complaint at 52–53.)  As explained below, these statements do not transform Reid's Complaint into admissible evidence.

Reid's verification is substantially similar to that analyzed in *Walker v. Tyler County Commission*, 11 F. App'x 270, 274 (4th Cir. 2001).[5]  In *Walker*, the United States Court of

---

[4]     Some of Reid's statements in his declaration are of no value in assessing the propriety of summary judgment. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (internal quotation marks omitted) (citations omitted) ("[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment").  For instance, Reid asserts that "he was attacked by Defendant Mayes . . . ."  (ECF No. 62–1, at 7.)  This sort of generalized and conclusory statement fails to create a material dispute of fact.

[5]     The verification at issue in *Walker* states: "[T]he facts contained within the attached pleading [are] true, except insofar as they are therein stated to be upon information and belief, and insofar as they are therein stated to be upon information and belief, [Plaintiff] believes them

Appeals for the Fourth Circuit did not permit such verification to transform the complaint into an affidavit, because the complaint did not indicate which factual allegations were based on the plaintiffs' personal knowledge. *Id.* at 274 (explaining that former Federal Rule of Civil Procedure 56(e) required an affidavit opposing a motion for summary judgment to be based on personal knowledge). The Fourth Circuit regarded the complaint as resting on "mere pleading allegations." *Id.*

On November 14, 2022, Reid filed a Motion to Amend Reply to the Motion for Summary Judgment. Reid's Motion (ECF No. 64) will be GRANTED, however, as explained below, Reid's Amended Reply (ECF No. 64–2) has little impact on the resolution of the Motion for Summary Judgment.

At the conclusion of Reid's Amended Reply, he states, "I declare under penalty of perjury that the foregoing is true and accurate." (*Id.* at 11.) This statement does not transform the Amended Reply into admissible evidence. The Court has repeatedly informed Reid that:

> [T]he Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled "Affidavit" or "Sworn Statement," and reflect that the sworn statements of fact are made on personal knowledge and the affiant is competent to testify on the matters stated therein. *See* Fed. R. Civ. P. 56(c)(4).

(ECF No. 34, at 2; ECF No. 38, at 2.)

In his Motion to Amend Reply, Reid summarily states "Plaintiff is needed [sic] more time for discovery." (ECF No. 64, at 3.) Generally, summary judgment is appropriate only "after adequate time for discovery." *Celotex Corp.*, 477 U.S. at 322. Thus, Federal Rule of Civil Procedure 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for

---

to be true." *Walker*, 11 F. App'x at 274. Nevertheless, as is the case here, "[t]he factual allegations in the complaint do not indicate which, if any, are based on personal knowledge." *Id.*

specified reasons, it cannot present facts essential to justify its opposition, the court may" deny

the motion for summary judgment or issue any other appropriate order. Fed. R. Civ. P. 56(d).

"The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of

Rule 56([d]) in good faith and to afford the trial court the showing necessary to assess the merit

of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th

Cir. 2002) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir.

1988)).  Thus, requests for relief under Rule 56(d) "should be denied . . . 'if the additional

evidence sought for discovery would not have by itself created a genuine issue of material fact

sufficient to defeat summary judgment.'" *Works v. Colvin*, 519 F. App'x 176, 182 (4th Cir.

2013) (quoting *Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)).

In the first instance, it must be noted that Reid has not filed a rule 56(d) affidavit. *See*

*Harrods Ltd.*, 302 F.3d at 244 (emphasizing the importance of the affidavit).  Additionally, Reid

fails to coherently explain what discovery is needed and how it would allow any of his claims to

survive summary judgment. *See Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954

(4th Cir. 1995) (denying relief under Rule 56(d) where plaintiff "did not specifically allege why

the information sought would have been sufficient to create a genuine issue of material fact such

that it would have defeated summary judgment").  Accordingly, no action will be taken on

Reid's vague suggestion that he needs additional time to conduct discovery.

In light of the foregoing submissions and principles, the following facts are established

for purposes of the Motion for Summary Judgment.  All permissible inferences are drawn in

favor of Reid.

## II. Summary of Relevant Facts

### A. The April 28, 2020 Incident between Reid and Defendant Mayes

In April of 2020, Reid was incarcerated in the RRJ. (ECF No. 56–1, ¶¶ 3–4.) At that time, Reid was a convicted felon, (ECF No. 56, at 3 n.2), and Defendant Mayes served as a corporal at the Jail, (ECF No. 56–1 ¶ 3). Around 10:20 p.m., Defendant Mayes began serving the Ramadan trays for the inmates. (*Id.* ¶ 5.) Defendant Mayes "reported that the Ramadan bags for the Nation of Islam ('NOI') inmates were not on the cart with the Ramadan meals." (*Id.*) "While issuing Inmate Reid his Ramadan tray, Inmate Reid became upset because he did not receive his Ramadan bag." (*Id.* ¶ 6.) Defendant Mayes informed Reid that he would investigate the issue. (*Id.*) After serving the rest of the Ramadan trays, Defendant Mayes investigated whether there were additional Ramadan bags. (*Id.*)

Although there were not any bags marked "NOI," there were additional bags marked "Sunni." (*Id.* ¶ 7.) The contents of the "Sunni" bags were largely identical to the "NOI" bags. (*Id.*) Defendant Mayes returned to Reid's housing unit to hand out the bags. (*Id.*) When Defendant Mayes went to Reid's cell, Reid was sitting on a stool in the middle of his cell. (*Id.*) Defendant Mayes entered Reid's cell and informed him that he had corrected the issue. (*Id.*) Reid "informed Mayes that [he] could not accept the Sunni bag because the NOI diet was specific and strict to its core beliefs and practices. Mayes told [Reid] to take the bag or get nothing." (ECF No. 62–1, at 2.)

Reid then:

> asked Mayes to speak with the Sergeant to rectify the issue because [he] had been working all day and was hungry and needed the bag for the dates to break [his] fast. Mayes again said that he was not calling a sergeant and told [Reid] to take the bag. [Reid] refused to accept the Sunni bag and Mayes got angry and said, 'I don't have time for this shit,' then proceeded to come in the cell to place the bag on the table.

6

(*Id.* at 3.)[6]

"Reid insisted that he wanted to see a Sergeant and began walking towards the cell door. [Defendant Mayes] demanded that Inmate Reid stop and not exit the cell, but Inmate Reid continued to walk towards the exit door." (ECF No. 56–1 ¶ 7.)  As Reid attempted to move past Defendant Mayes, Defendant Mayes used his:

> right arm to push against Inmate Reid so that he could not leave the cell.  Inmate Reid stated, "Don't put your hands on me."  Inmate Reid then tried to push past [Defendant Mayes] again, at which point [Defendant Mayes] reached out with both hands to push Inmate Reid further back to give [himself] distance to secure the door so Inmate Reid could not exit.

(*Id.* ¶ 8.)  As Defendant Mayes reached out to push Reid, Reid struck Defendant Mayes with a closed fist on the right side of Defendant Mayes's face.  (*Id.*)  Defendant Mayes grabbed for Reid's shoulders to push him back in the cell.  (*Id.*)  Defendant Mayes was then dragged into the cell as he was trying to place Reid's hands behind his back.  (*Id.*)  Defendant Mayes "ended up near the bunk and then slipped and fell because of food on the floor."  (*Id.*)  Defendant Mayes's radio fell off, and he was unable to call for assistance.  (*Id.*)  Reid and Defendant Mayes "continued to grapple which led to [Defendant Mayes] striking [his] head against the metal shelving or toilet.  Additional RRJ staff entered the cell and stopped the altercation."  (*Id.*)  Defendant Mayes never punched Reid or used pepper spray.  (*Id.* ¶ 9.)

"Reid did not suffer any visible injuries as a result of the incident.  (*Id.* ¶ 11.)[7]

---

[6]   Reid insists that if he had "accepted **and eaten**," the Sunni Ramadan bag, he would have had "to add an additional 30 days to [his] fast." (ECF No. 62–1, at 3 (emphasis added).)  Of course, Reid could have simply left the bag on the table and not eaten it without any impact on his spiritual beliefs.

[7]   Reid, however, swears that he had some undefined "injuries to [his] lower back and right shin . . . ." (ECF No. 62–1, at 7.)

"Inmate Reid was charged with a criminal complaint in the Circuit Court for Prince George, Virginia. . . . Inmate Reid was found guilty of assault on a law enforcement officer and was sentenced to five years with two years suspended." (*Id.* ¶ 12.)

### B. The Investigation of the April 28, 2020 Incident

On April 28, 2020, Charlene Jones served as a lieutenant in the RRJ in the office of professional review. (ECF No. 56–2, ¶ 2.) Defendant Jones was responsible for investigating the incident between Defendant Mayes and Reid. (*Id.* ¶ 4.) Defendant Jones took a statement from Defendant Mayes, "gathered photographs of Inmate Reid's cell, and gathered photographs of the Sergeant Mayes'[s] injuries." (*Id.*) She also watched a video of the incident. (*Id.*)

> Following the incident, Inmate Reid was charged with two RRJ Major violations: assaulting or instigating assault on a person/staff and creating a security disturbance causing staff to respond. Inmate Reid was provided with written notice of the charges against him. A disciplinary hearing was conducted on May 4, 2020, where Inmate Reid had the opportunity to respond to the charges with evidence and witnesses. Inmate Reid was found guilty of both charges and received a total of 30 days lockdown for the incident. Inmate Reid was provided with a written statement by the fact finders of the evidence relied upon and the reasons for the disciplinary action. Innate Reid appealed the decision, which was ultimately denied.

(*Id.* ¶ 5 (citation omitted).)[8]

Defendant Jones also provided the relevant records to the Commonwealth's Attorney for Prince George County, Virginia. (*Id.* ¶ 7.) Additionally, Defendant Jones reviewed the grievances filed by Reid related to the April 28, 2020 incident. (*Id.* ¶ 8.)

### C. Defendant Spratley and Reid's Grievances

Defendant Spratley "was not responsible for investigating the incident between Sergeant Mayes and Inmate Reid that occurred on April 28, 2020 . . . ." (ECF 56–2 ¶ 10.) However,

---

[8]     Prior to the hearing, Defendant Jones did not question Reid to get his version of the altercation with Defendant Mayes. (ECF No. 62–1, at 11.)

Defendant Spratley reviewed and responded to grievances that Reid submitted concerning the incident. (ECF No. 56–9, at 13.)

## III. Analysis

### A. Excessive Force — Claim One

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).[9]

When an inmate claims that prison officials used excessive force against his person, the objective component is less demanding relative to the subjective component. *See id.* With respect to the objective component, the inmate must demonstrate that the "nature" or amount of force employed "was nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010); *see id.* at 38

---

[9] When an inmate challenges his conditions of confinement, he must allege "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (citing *Wilson*, 501 U.S. at 301–03). Deliberate indifference requires the plaintiff to allege facts suggesting that a particular defendant actually knew of and disregarded a substantial risk of serious harm to the plaintiff's person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

(observing that "a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim" (quoting *Hudson*, 503 U.S. at 9)). Regarding the subjective component, the inmate must demonstrate "wantonness in the infliction of pain." *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). "The 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

The Supreme Court has identified several "factors to assist courts in assessing whether an officer has acted with wantonness." *Iko*, 535 F.3d at 239 (internal quotation marks omitted). These include:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

*Id.* (quoting *Whitley*, 475 U.S. at 321). Additionally, although not dispositive, the extent of the injury suffered by the inmate is also relevant to the subjective inquiry. *Wilkins*, 559 U.S. at 37–38. The extent of the injury "may suggest whether the use of force could plausibly have been thought necessary in a particular situation" or "provide some indication of the amount of force applied." *Id.* at 38 (internal quotation marks omitted). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321 (emphasis added) (citing *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir. 1985)).

Defendant Mayes used force three times: (1) initially pushing Reid with his right arm so that Reid could not leave the cell; (2) attempting to push Reid with two hands when Reid tried to

10

move past him; and (3) during the subsequent struggle where Defendant Mayes grabbed Reid and they both ended up on the floor. All of the above factors indicate that the force employed by Defendant Mayes was employed in "a good-faith effort to maintain or restore discipline" rather than "maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

Defendant Mayes reasonably perceived that some force was needed to stop Reid from exiting the cell. Before pushing Reid, Defendant Mayes told Reid to stop attempting to exit the cell. Reid ignored Defendant Mayes's command and continued to attempt to exit the cell. Defendant Mayes's single-armed push of Reid was a limited, measured response for Reid's truculent behavior. This action amounted to a good faith effort to maintain order in the RRJ.

Nevertheless, Reid became ever more belligerent. "Reid stated, 'Don't put your hands on me.' Inmate Reid then tried to push past [Defendant Mayes] again." (ECF No. 56–1 ¶ 8.) Plainly, words alone were not going to bring Reid into compliance. At this point, Defendant Mayes reasonably perceived that the only way to prevent Reid from exiting the cell was to shove him away from door and attempt to secure the door. Once again, Defendant Mayes demonstrated a measure used of force in an attempt to maintain order.

However, Reid once again escalated the situation and punched Defendant Mayes in the face with a closed fist. Instead of punching Reid back, Defendant Mayes grappled with Reid, and they fell to the floor. This was a commendable effort by Defendant Mayes to deescalate the violence of the situation and restore order. At the end of the altercation, Reid had no visible injuries. The record demonstrates that Defendant Mayes only applied force "in a good-faith effort to maintain or restore discipline." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). There is no evidence that Defendant Mayes acted "maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). Claim One will be DISMISSED.

### B. Claims Against Spratley and Jones

In Claims Two (a) through Two (c), Reid contends that Defendants Spratley and Jones violated his rights by failing to investigate the April 28, 2020 incident involving Reid and Defendant Mayes. These claims lack factual merit. The undisputed record reflects that Defendant Jones did investigate the incident and that Defendant Spratley was not responsible for investigating the incident. This alone forecloses Reid's claims. Nevertheless, the Court will provide further discussion of the lack of legal merit of Reid's claims.

#### 1. First Amendment Retaliation — Claim Two (a)

In order to survive summary judgment on a claim for retaliation in violation of the First Amendment, a plaintiff must demonstrate "that (1) [he or] she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [the plaintiff's] First Amendment rights, and (3) there was a causal relationship between [the plaintiff's] protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citation omitted).

Reid contends that Defendants Spratley and Jones "retaliated against Reid, unlawfully denying Reid the process he was due for exercise of his right to seek redress from the jail through use of the jail grievance procedure[s] . . . ." (Complaint at 40–41.) Reid's retaliation claim fails at the first step as he fails to demonstrate that he was engaged in any protected First Amendment activity.[10] To the extent that Reid suggests that Defendants interfered with his ability to pursue grievances, this fails to state a claim as a legal matter. This is so, because "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *see also Adams v.*

---

[10]     Reid certainly did not enjoy a constitutional right to ignore Defendant Mayes and assault him.

*Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Moreover, factually, the record reflects that Reid filed a host of grievances while at the RRJ which were addressed by RRJ staff. Accordingly, Claim Two (a) will be DISMISSED.

### 2. Eighth Amendment — Claim Two (b)

Reid contends that the lack of investigation by Defendants Jones and Spratley violated his rights under the Eighth Amendment. Reid fails to demonstrate that he was deprived of a basic human need by Defendants Jones and Spratley or that they acted with deliberate indifference to any prison conditions. *See Williams*, 952 F.2d at 824. Accordingly, Claim Two (b) will be DISMISSED.

### 3. Due Process — Claim Two (c)

Finally, Reid contends that the failure of Defendants Jones and Spratley denied him due process. "However, the failure to investigate a complaint or grievance fails to state a claim of constitutional dimension." *Hinton v. Mason*, 2018 WL 1763520, at *5 (E.D. Va. Apr. 12, 2018) (citing *Charles v. Nance*, 186 F. App'x 494, 495 (5th Cir. 2006); *Sweat v. Rennick*, 2012 WL 1358721, at *2 (D.S.C. Feb. 7, 2012); *Lewis v. Williams*, 2006 WL 538546, at *7 (D. Del. Mar. 6, 2006)), *aff'd sub nom. Hinton v. Mason*, 732 F. App'x 204 (4th Cir. 2018). Accordingly, Claim Two (c) will be DISMISSED.

## IV. Conclusion

The Motion for Summary Judgment (ECF No. 55) will be GRANTED. Reid's claims will be DISMISSED. The action will be DISMISSED.

Let the Clerk file a copy of this Memorandum Opinion electronically and send a copy to Reid and counsel of record.

An appropriate Final Order shall issue.

_____ /s/

David J. Novak
United States District Judge

Richmond, Virginia
Dated: November 15, 2022

14